UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

STEUBEN FOODS, INC.,

                         Plaintiff,

                                                    **DECISION AND ORDER**
                                                    10-CV-781A

          v.


SHIBUYA HOPPMANN CORP.,

                         Defendant.


I.      **INTRODUCTION**

        Pending before the Court are motions by defendant Shibuya Hoppman

Corporation to dismiss plaintiff's complaint (Dkt. No. 7) and, in the alternative, to

stay this case (Dkt. No. 9) pending re-examination of two of the six patents that

plaintiff has identified as relevant to its infringement claims.  Defendant believes

that outright dismissal is appropriate because it does not have sufficient contacts

with New York to create personal jurisdiction, and because plaintiff's allegations

of patent infringement are too conclusory to survive scrutiny under Rule 12(b)(6)

of the Federal Rules of Civil Procedure ("FRCP").  As an alternative request,

defendant asks the Court to stay the case until the United States Patent and

Trademark Office ("USPTO") completes its review of two out of the six patents

that plaintiff believes have been infringed.  Defendant contends that a revocation

or significant alteration of these patents would have enough of an impact on the litigation that the Court should wait for guidance from the USPTO.

Plaintiff opposes both motions.  According to plaintiff, defendant's own admission of occasional sales in New York, coupled with attendance at an annual trade show in New York and an interactive website that facilitates sales, more than suffices to establish personal jurisdiction.  Plaintiff also contends that it has set forth its allegations of patent infringement in sufficient detail to put defendant on notice about the patents and the technology in question.  Finally, plaintiff argues against a stay on the grounds that re-examination of two of the patents in question does not affect the other four patents that allegedly have been infringed. At a minimum, according to plaintiff, litigation can proceed with respect to the four patents that have not been challenged.

The Court held oral argument on July 25, 2011.  For the reasons below, the Court denies both motions.

## II.    BACKGROUND

This case concerns plaintiff's allegations that defendant manufactures and sells automated bottling machines that infringe on six of its patents.  Among other products or services, both parties manufacture and sell "aseptic filling systems"—that is, automated machines that fill aseptically sterilized bottles at high rates of speed.  Plaintiff, a New York corporation based in Elma, New York,

owns six patents pertaining to equipment and processes for bottling that allows it

to sell machines that process more than 100 bottles per minute.  The technical

details of these six patents are not relevant to the pending motions, but these

patents generally concern issues such as disinfecting bottles with hydrogen

peroxide, disinfecting bottles in a way that sharply reduces contamination while

bottling at high speed, and filling bottles in a way that preserves the sterility of the

food product.  The parties never have worked together, though a corporate

predecessor of defendant visited plaintiff's Elma facility a few years ago to

discuss the possibility of having defendant install machinery at that facility.

A trade show appears to have brought defendant's allegedly infringing

conduct to plaintiff's attention.  INTERPHEX is an annual trade show "for industry

professionals and contract service providers in the fields of pharmaceutical and

biopharmaceutical manufacturing."  (Dkt. No. 19-4 at 17.)  Whether the location of

INTERPHEX varies is not clear from the record, but the trade show was held in

New York City in 2009, 2010, and 2011.  Defendant attended INTERPHEX in

2009, 2010, and 2011.  Among other activities in which it may have engaged,

defendant displayed its Dual Robotic Aseptic System and its hydrogen peroxide

decontamination system at INTERPHEX 2009 and its Compact Filler/Capper

machine at INTERPHEX 2010.  Plaintiff also attended these INTERPHEX trade

shows; Thomas Taggart, a vice president for plaintiff, claims to have observed

defendant showcasing machinery incorporating sterilization and filling techniques

covered by plaintiff's patents.  Defendant announced its attendance at INTERPHEX on both its website and its Facebook page.

In response to the alleged patent infringement that came to its attention, plaintiff filed its complaint on September 29, 2010.  In the complaint, plaintiff asserted that defendant does business in New York and has engaged in actual, induced, and contributory infringement.  Plaintiff asserted further that it sent defendant written notice on September 25, 2009 about the existence of its patents.  Defendant allegedly never acknowledged receipt of that written notice.  The complaint contains two causes of action.  In the first cause of action, plaintiff accuses defendant of actual, induced, and contributory infringement that continues through the present time.  In the second cause of action, plaintiff requests injunctive relief on the grounds that defendant's continued patent infringement is causing irreparable harm that monetary relief cannot address.

Defendant filed the pending motions in lieu of answering the complaint.  With respect to the motion to dismiss, defendant advances two bases for dismissal.  First, defendant argues a lack of personal jurisdiction or, alternatively, improper venue.  Although defendant acknowledged at oral argument that it has sold products from time to time in New York, it denies having any physical presence, employees, mailing addresses, or similar features in New York.  Additionally, defendant contends that its attendance at INTERPHEX by itself does not suffice to establish personal jurisdiction because that trade show constitutes

4

an isolated or sporadic event at which it has not completed sales.  To the extent

that plaintiff bases jurisdiction on the features of defendant's website, defendant

argues that its website is not sufficiently "interactive" to constitute either doing

business in New York or projecting itself into New York for purposes of due

process analysis.  Second, defendant argues that the assertion of patent

infringement in the complaint does not identify specific machinery or specific

features of that machinery that allegedly infringes on plaintiff's patents.

Consequently, according to defendant, plaintiff's allegations are so conclusory

that the complaint is subject to dismissal under FRCP 12(b)(6).

Along with the motion to dismiss, defendant filed an alternative motion to

stay litigation pending the re-examination of two of plaintiff's patents by the

USPTO.  Of the six patents that plaintiff placed in issue, third parties not affiliated

with defendant have requested and received re-examination for two of them

under 35 U.S.C. §§ 301–307.  On June 29, 2010, non-party Joseph W. Holland

requested re-examination of all 20 claims for Patent No. 6,536,188 (the "`188

Patent").  In a decision dated November 5, 2010, the USPTO agreed with Holland

and issued a preliminary rejection of those claims; the re-examination process as

a whole has not ended.  On September 24, 2010, non-party Charles A. Gaglia

requested re-examination of all 20 claims for Patent No. 6,945,013 (the "`013

Patent").  That re-examination also is ongoing.  Defendant argues that the results

of these re-examinations could change the scope and substance of plaintiff's

claims and the rights that are potentially at stake.  Accordingly, and because this case is in its earliest stages, defendant contends that a stay would provide the benefit of clarifying the issues in the case without imposing any prejudice on plaintiff.  Defendant estimates that a stay would not last long because the re-examinations have been proceeding for some time and because it does not intend to challenge plaintiff's other four patents.

Plaintiff opposes both pending motions and urges the Court to allow the case to move forward.  According to plaintiff, proper venue in patent infringement cases occurs wherever personal jurisdiction exists, and personal jurisdiction exists here through a combination of factors.  Through admitted occasional sales in New York, repeated attendance at New York trade shows, a sales representative assigned to New York, and an interactive website that includes a "shopping cart" feature, defendant supposedly has established sufficient contacts with New York to satisfy both state and federal law.  Plaintiff also emphasizes that defendant's sales efforts in New York include the attempted sale to plaintiff a few years ago, even if defendant's corporate predecessor technically handled that negotiation.  As for the sufficiency of its claims, plaintiff contends that this is a simple infringement case and that it has adequately alleged that the infringement has occurred and continues to occur.  Finally, plaintiff argues against any stay because its claims against defendant do not rest on the outcome of the re-examinations currently under way.

III.    **DISCUSSION**

For the sake of clarity, the Court will address each of defendant's arguments separately below.  In reviewing defendant's arguments about personal jurisdiction, the Court will look to precedent from the United States Court of Appeals for the Federal Circuit.  The Court will do so because plaintiff brought this case in part under 28 U.S.C. § 1338, which gives district courts original jurisdiction over patent cases, and the Federal Circuit "shall have exclusive jurisdiction of an appeal from a final decision of a district court of the United States . . . if the jurisdiction of that court was based, in whole or in part, on section 1338 of this title . . . ."  28 U.S.C. § 1295(a)(1); *see also Akro Corp. v. Luker*, 45 F.3d 1541, 1543 (Fed. Cir. 1995) ("We apply the law of the Federal Circuit, rather than that of the regional circuit in which the case arose, when we determine whether the district court properly declined to exercise personal jurisdiction over an out-of-state accused infringer.") (citation omitted).  In contrast, this Court will apply Second Circuit precedent to defendant's arguments under FRCP 12(b)(6) because the Federal Circuit "reviews dismissal for failure to state a claim upon which relief can be granted under the law of the regional circuit."  *Juniper Networks, Inc. v. Shipley*, 643 F.3d 1346, 1350 (Fed. Cir. 2011) (citation omitted).

## A.   *Defendant's Motion to Dismiss*

### 1.   **Personal Jurisdiction**

#### a.   *General Standard*

Plaintiff bears the burden of establishing personal jurisdiction, but that burden is fairly light this early in the case.  "Because the parties have not conducted discovery, the plaintiff need[s] only to make a prima facie showing that the defendant [was] subject to personal jurisdiction."  *Silent Drive, Inc. v. Strong Indus., Inc.*, 326 F.3d 1194, 1201 (Fed. Cir. 2003) (internal quotation marks and citations omitted).  "In the procedural posture of a motion to dismiss, a district court must accept the uncontroverted allegations in the plaintiff's complaint as true and resolve any factual conflicts in the affidavits in the plaintiff's favor."  *Elecs. For Imaging, Inc. v. Coyle*, 340 F.3d 1344, 1349 (Fed. Cir. 2003) (citations omitted).

#### b.   *Specific Jurisdiction*

"Determining whether specific personal jurisdiction over a nonresident defendant is proper entails two inquiries: whether a forum state's long-arm statute permits service of process, and whether the assertion of jurisdiction would be inconsistent with due process."  *Coyle*, 340 F.3d at 1349 (citations omitted). "Because New York's long-arm statute does not reach to the limits of due process, the inquiry in this case is confined to whether a New York court would have jurisdiction over [defendant] based on the conduct alleged in the complaint

8

and in the plaintiffs' response to [defendant's] motion to dismiss." *Pieczenik v. Dyax Corp.*, 265 F.3d 1329, 1333 (Fed. Cir. 2001) (citation omitted).

In turn, whether a New York court would have personal jurisdiction over defendant hinges on the application of New York's "long-arm" statute, N.Y. CPLR 302.  Two provisions of CPLR 302 are potentially relevant here: namely, the provisions covering a defendant who "transacts any business within the state or contracts anywhere to supply goods or services in the state," CPLR 302(a)(1); or who "commits a tortious act within the state," CPLR 302(a)(2).  The parties have focused on CPLR 302(a)(1).  "Interpreting New York and Second Circuit cases, we have held that for a court to assert jurisdiction over a defendant under section 302(a)(1), the plaintiff must satisfy two requirements: (1) the defendant's business activities in New York must be activities by which the defendant projects itself into New York in a way as to purposefully avail itself of the benefits and protections of New York laws and (2) the plaintiff's cause of action must arise out of that business activity within the state." *Pieczenik*, 265 F.3d at 1333 (citation omitted). "The second requirement, the so-called nexus test, is interpreted very narrowly by the New York courts.  A single business transaction is sufficient to satisfy the nexus test under section 302(a)(1), but the cause of action must arise from the transaction of business in New York." *Id.* (internal quotation marks and citations omitted).

9

Here, the information available so far from the parties indicates that defendant has projected itself into New York in several ways.  Although it did not divulge details, defendant itself admitted at oral argument that it has sold products from time to time in New York.  Conducting occasional sales likely means that defendant has some kind of base of customers in New York for both machinery sales and for follow-up sales of parts and service.  For at least the past three years in a row, defendant has attended the INTERPHEX trade show in New York City.  Even crediting defendant's assertion that it never has made a sale at INTERPHEX, it tried to make sales there by demonstrating various machinery and by announcing its attendance on its website and Facebook page. *Cf. GTFM, Inc. v. Int'l Basic Source, Inc.*, No. 01 CIV. 6203, 2002 WL 31050840, at *4 (S.D.N.Y. Sept. 12, 2002) ("Even though there is no proof that Offending Goods were sold in the state, the sale of other merchandise, the brochure printed in New York (which may or may not have advertised the Offending Goods), and [defendant's] attendance at a yearly trade show all increased the possibility that Offending Goods would be purchased."); *Hsin Ten Enter. USA, Inc. v. Clark Enters.*, 138 F. Supp. 2d 449, 456 (S.D.N.Y. 2000) (finding personal jurisdiction in part because the defendants "have representatives who have appeared in trade shows in New York, and have sold several [items] to New York residents").  Defendant also tried to make a sale with plaintiff a few years ago, even if by way of a corporate predecessor.

10

Defendant's website also helps project it into New York.  The website does not appear to contain information specific to New York customers and appears to lack the ability to complete a sale entirely online.  *Cf. Stephan v. Babysport, LLC*, 499 F. Supp. 2d 279, 287–88 (E.D.N.Y. 2007) ("Babysport's website does not rise to the level of transacting business in New York State.  Customers cannot complete a contract for sale via the Babysport website.  Instead, the website links the user to sites such as Amazon.com where the product may be purchased.  The Babysport website is thus best described as a 'passive' website which 'does little more than make information available to those who are interested' in the product.") (citation omitted).  Nonetheless, defendant's website is not the kind of website that directs a one-way flow of information.  In contrast to defendants who receive information and simply post it on their own website server, defendant here will use its New York sales representative to reach out to potential customers in New York who submit their contact information and ask to be contacted about potential sales.  *Cf. Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119, 1126 (W.D. Pa. 1997) (finding personal jurisdiction through online business transactions where the "intended object of these transactions has been the downloading of the electronic messages that form the basis of this suit in Pennsylvania"); *see also Lenahan Law Offices, LLC v. Hibbs*, No. 04-CV-6376, 2004 WL 2966926, at *6 (W.D.N.Y. Dec. 22, 2004) (Siragusa, *J.*) (implying that personal jurisdiction would exist if defendant had been "transmitting files into New

York").  Since defendant uses its website as another tool to cultivate customer relationships in New York, the website contributes to a finding of personal jurisdiction.

Crediting for now plaintiff's contention that the completed sales, attempted sales, and potential sales described above involved machinery infringing on its patents, the information available to the Court so far indicates that defendant deliberately projects itself into New York on a sufficiently frequent basis for business activities that correspond to plaintiff's causes of action.  That is enough to make a prima facie case of personal jurisdiction at this time, subject to proof by a preponderance of the evidence at trial.

Because plaintiff has made a prima facie case of specific personal jurisdiction based on defendant's business activities in New York, an analysis of "general jurisdiction" is not necessary.  *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415–16 (1984) (assessing general jurisdiction only after noting that specific jurisdiction did not exist).  Accordingly, the Court rejects defendant's arguments to dismiss this case based on personal jurisdiction.  The Court also need not consider any arguments about venue because "the venue point is a non-issue.  Venue in a patent action against a corporate defendant exists wherever there is personal jurisdiction.  Therefore, no separate venue inquiry is necessary."  *Trintec Indus., Inc. v. Pedre Promotional Prods., Inc.*, 395 F.3d 1275, 1280 (Fed. Cir. 2005) (citations omitted).

12

## 2.    Failure to State a Claim Under FRCP 12(b)(6)

Next, the Court turns to defendant's argument to dismiss this case under

FRCP 12(b)(6).  "A pleading that states a claim for relief must contain . . . a short

and plain statement of the claim showing that the pleader is entitled to relief."

FRCP 8(a)(2).  "'A short and plain statement of the claim' does not mean 'a short

and plain statement of the eventual jury charge for that claim' or 'a short and plain

recitation of the legal elements for that claim.'  FRCP 8(a)(2) requires a plaintiff to

state, in concise but plausible fashion, what he currently thinks a defendant

actually did to him, subject to revision during later discovery." *Beswick v. Sun*

*Pharm. Indus., Ltd.*, No. 10-CV-357, 2011 WL 1585740, at *5 (W.D.N.Y. Mar. 4,

2011) (Arcara, *J.*).  "To survive a motion to dismiss, a complaint must contain

sufficient factual matter, accepted as true, to state a claim to relief that is

plausible on its face.  A claim has facial plausibility when the plaintiff pleads

factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged.  The plausibility standard is not

akin to a probability requirement, but it asks for more than a sheer possibility that

a defendant has acted unlawfully." *Ashcroft v. Iqbal*, ___ U.S. ___, 129 S. Ct.

1937, 1949 (2009) (internal quotation marks and citations omitted).

Here, plaintiff has set forth just enough of a narrative about patent

infringement that additional factual detail can await discovery.  Plaintiff has

alleged that it owns six patents pertaining to aseptic filling systems, and has

attached copies of those patents to the complaint.  Plaintiff also has alleged that defendant has been manufacturing and selling aseptic filling machines that infringe on its patents.  The written notice of infringement that plaintiff sent defendant and attached to the complaint (Dkt. No. 1-1 at 111–12) supports plaintiff's narrative that defendant is aware of its ongoing infringement and is not concerned.  The level of detail that plaintiff has provided so far matches the level of detail that would have been sufficient under FRCP 84 had it chosen to use the complaint set out in FRCP Form 18.  *See* FRCP 84 ("The forms in the Appendix suffice under these rules and illustrate the simplicity and brevity that these rules contemplate."); *Automated Transactions, LLC v. First Niagara Fin. Grp., Inc.*, No. 10-CV-407, 2010 WL 5819060, at *5 (W.D.N.Y. Aug. 31, 2010) (McCarthy, *M.J.*) (report and recommendation) ("[N]o greater specificity than that of Form 18 is necessary in order to state a cause of action for infringement.") (citation omitted), *adopted by* 2011 WL 601559 (W.D.N.Y. Feb. 11, 2011) (Arcara, *J.*).  Neither FRCP 84 nor Form 18 are restricted to *pro se* litigants, who would receive more procedural leeway.  Plaintiff obviously will have to flesh out a lot of details to prove its case at trial.  For now, however, plaintiff concisely and plausibly has put defendant on notice that its aseptic filling machines—as opposed to, for example, its Compact Filler/Capper—infringe on its patents.  *See also McZeal v. Sprint Nextel Corp.*, 501 F.3d 1354, 1357 (Fed. Cir. 2007) ("[A] plaintiff in a patent infringement suit is not required to specifically include each element of the claims

14

of the asserted patent.") (citation omitted).  The Court thus rejects defendant's argument to dismiss for failure to state a claim.

**B.**   ***Motion to Stay Pending Re-examination***

Because the Court has decided not to dismiss the case, it will turn to defendant's alternative motion to issue a stay pending the completion of re-examination proceedings for the `188 Patent and the `013 Patent.  "Courts have inherent power to manage their dockets and stay proceedings, including the authority to order a stay pending conclusion of a PTO reexamination."  *Ethicon, Inc. v. Quigg*, 849 F.2d 1422, 1426–27 (Fed. Cir. 1988) (citation omitted). "However, a district court may allow a case to move forward while reexaminations are underway since the functions of the courts and the Patent Office are very different and are concepts not in conflict."  *TouchTunes Music Corp. v. Rowe Int'l Corp.*, 676 F. Supp. 2d 169, 176 (S.D.N.Y. 2009) (internal quotation marks and citations omitted).  "In determining whether to stay litigation pending reexamination by the PTO, courts generally consider the following factors: (1) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party; (2) whether a stay will simplify the issues in question and trial of the case; and (3) whether discovery is complete and whether a trial date has been set."  *Xerox Corp. v. 3Com Corp.*, 69 F. Supp. 2d 404, 406 (W.D.N.Y. 1999) (Telesca, *J.*) (citations omitted).

Here, the single most important characteristic of this case affecting the propriety of a stay is that it involves six different patents. These patents all relate in some way to the aseptic filling process but encompass different technical details. Four of these patents have *not* been subjected to re-examination. In the complaint, plaintiff alleges ongoing infringement of all six. The investigations, depositions, and document exchanges necessary for discovery in this case will be substantially similar regardless of whether the case proceeds to trial on six patents or four. *Cf. TouchTunes*, 676 F. Supp. 2d at 177 ("While there exists some relationship between all of the [defendant competitor's] patents-in-suit, the validity of the `780 and `765 patents is not tied to the outcome of [defendant's] appeal from the Examiner's rejection of its other four patents."). A complete revocation of the `188 and `013 Patents thus would appear to require no more than minor adjustments to plaintiff's theories of liability. As a result, this case differs from cases in which a stay made sense because liability rested entirely on the validity of a single patent. *Cf., e.g., Gaymar Indus., Inc. v. Cincinnati Sub-Zero Prods., Inc.*, No. 08-CV-299, 2009 WL 3162213, at *3 (W.D.N.Y. Sept. 28, 2009) (Skretny, *J.*) (granting a stay where "[t]here [was] only one patent at issue and a single claim of infringement"); *K.G. Motors, Inc. v. Specialized Bicycle Components, Inc.*, No. 08-CV-6422, 2009 WL 2179129, at *4 (W.D.N.Y. July 22, 2009) (Payson, *M.J.*) (granting a stay where a single patent was at issue and "where the alleged infringer represents that it has ceased manufacturing the

16

challenged product and will cease sales of the product before the litigation would conclude"); *Bausch & Lomb Inc. v. Rexall Sundown, Inc.*, 554 F. Supp. 2d 386, 391 (W.D.N.Y. 2008) (Payson, *M.J.*) (granting a stay where a single patent was at issue and where the defendant "[was] not currently selling the alleged infringing product and [was] willing to condition the stay on its undertaking not to do so during the pendency of the reexamination proceedings") (citation omitted).  Even though discovery has not begun here, which would put the third *Xerox* factor squarely on defendant's side, the inability of a stay to simplify the issues in question shifts considerable weight to the second *Xerox* factor and puts that factor on plaintiff's side.

The indefinite nature of the ongoing re-examination process puts the first *Xerox* factor on plaintiff's side and further weighs against a stay.  At oral argument, the parties did not express any certainty as to when the re-examination process might conclude.  Additionally, although defendant has represented to the Court that it will not challenge plaintiff's other four patents, it is not bound by that representation.  Third parties also are not bound by defendant's representation; in fact, the first two re-examination requests were submitted by third parties not connected to defendant.  The Court wants to avoid a situation in which intentionally or coincidentally staggered requests for re-examination hamper this litigation indefinitely.  If later patent revocations or additional re-examination requests cast serious doubt on the substance of plaintiff's theories of liability then

17

the parties may advise the Court at that time. Until then, the most prudent course of action is to allow the case to proceed based on all the discovery that has to occur regardless of how the ongoing re-examinations end. The Court thus denies defendant's motion for a stay.

## IV. CONCLUSION

For all of the foregoing reasons, the Court denies defendant's motions to dismiss (Dkt. No. 7) and to stay pending patent re-examination (Dkt. No. 9). Defendant shall answer the complaint within 20 days of entry of this Decision and Order.

SO ORDERED.

s/ Richard J. Arcara
HONORABLE RICHARD J. ARCARA
UNITED STATES DISTRICT JUDGE

DATED:
August 15, 2011