# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NEW YORK

---

**STEUBEN FOODS, INC.,**

       *Plaintiff,*

   v.

**SHIBUYA HOPPMANN CORP.,**
**SHIBUYA KOGYO CO., LTD.,**
**and HP HOOD LLC,**

       *Defendants.*

Case No.: 1:10-cv-00781-EAW-JJM

---

## STEUBEN FOODS, INC.'S OPPOSITION TO DEFENDANTS' THIRD RENEWED MOTION TO DISMISS OR, IN THE ALTERNATIVE, TRANSFER DUE TO IMPROPER VENUE

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ...........................................................................................................ii

I.    The Court should deny Defendants' motion because their venue objection has been
      forfeited. ...........................................................................................................................1

  A.   A finding of forfeiture would promote judicial efficiency. .................................. 2

  B.   Hood has contributed to circumstances supporting a finding of forfeiture by foregoing
       several opportunities to object to litigating in the Western District of New York where it
       has deep and growing roots.................................................................................. 5

  C.   Defendants' wait-and-see approach regarding *TC Heartland* also supports a finding of
       forfeiture where the course of the coordinated Markman proceedings may well have been
       changed had they raised their objection sooner. ................................................. 8

  D.   The interests of Steuben and other parties in maintaining this suit in the Western District
       of New York support a finding of forfeiture.................................................... 11

  E.   Dismissal is not appropriate.............................................................................. 13

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Agri-Labs Holding LLC v. Taplogic LLC*,
　304 F. Supp. 3d 773 (N.D. Ind. 2018) ...................................................................11

*Anscombe Broad. Grp., Ltd. v. RJM Commc'ns, Inc.*,
　No. 03-cv-0306, 2004 WL 2491641 (W.D.N.Y. Nov. 3, 2004) .............................13

*Boston Sci. Corp. v. Cook Grp. Inc.*,
　269 F. Supp. 3d 229 (D. Del. 2017) .....................................................................12

*Concession Consultants, Inc. v. Mirisch*,
　355 F.2d 369 (2d Cir. 1966) ..................................................................................8

*Hamilton v. Atlas Turner, Inc.*,
　197 F.3d 58 (2d Cir. 1999) ...................................................................................11

*Intellectual Ventures II LLC v. FedEx Corp.*,
　No. 2:16-cv-00980, 2017 WL 5630023 (E.D. Tex. Nov. 22, 2017) ........................9

*Keranos LLC v. Silicon Storage Tech., Inc.*,
　No. 2:13-cv-00017, 2018 WL 7283284 (E.D. Tex. Mar. 1, 2018) .........................11

*Leroy v. Great W. United Corp.*,
　443 U.S. 173 (1979) ................................................................................................1

*Markman v. Westview Instruments, Inc.*,
　517 U.S. 370 (1996) ......................................................................................8, 9, 12

*McCleskey v. CWG Plastering, LLC*,
　No. 15-cv-01284, 2017 WL 1408049 (S.D. Ind. Apr. 19, 2017), *rev'd on*
　*unrelated grounds*, 897 F.3d 899 (7th Cir. 2018) ..................................................5

*In re Micron Tech., Inc.*,
　875 F.3d 1091 (Fed. Cir. 2017)................................................................... *passim*

*Neirbo Co. v. Bethlehem Shipbldg. Corp.*,
　308 U.S. 165 (1939)................................................................................................1

*In re Oath Holdings Inc.*,
　908 F.3d 1301 (Fed. Cir. 2018).................................................................5, 10, 11

*Princeton Digital Image Corp. v. Ubisoft Entm't SA*,
  No. 13-335, 2018 WL 3105062 (D. Del. Jun. 25, 2018) ......................................................3, 4

*Steuben Foods, Inc. v. Oystar Grp.*,
  No. 10-cv-780, 2018 WL 6718418 (W.D.N.Y. Oct. 1, 2018) .................................................11

*Steuben Foods, Inc. v. Shibuya Hoppmann Corp.*,
  No. 10-cv-781, 2018 WL 3195149 (W.D.N.Y. Jan. 16, 2018)................................................12

*TC Heartland LLC v. Kraft Foods Grp. Brands LLC*,
  37 S. Ct. 1514 (2017).................................................................................................... *passim*

**Statutes**

28 U.S.C. § 1404....................................................................................................................6

35 U.S.C. § 112(f)..................................................................................................................3

Plaintiff Steuben Foods, Inc. respectfully submits this Memorandum in opposition to Defendants' Third Renewed Motion to Dismiss or Transfer Due to Improper Venue [Dkt. 469]. As explained below, Defendants' venue defense has been forfeited due to the unique circumstances of this case.  The Court should deny Defendants' attempt to win a transfer of this long-pending case with deep roots in this District, including its ongoing coordination with four other litigations involving the same patents.

## I.   The Court should deny Defendants' motion because their venue objection has been forfeited.

In *In re Micron Technology, Inc.*, 875 F.3d 1091 (Fed. Cir. 2017), the Federal Circuit held that, while the Supreme Court's decision in *TC Heartland LLC v. Kraft Foods Group Brands LLC*, 37 S. Ct. 1514 (2017), changed the law on venue in a way that would excuse waiver of a venue objection under Federal Rule of Civil Procedure 12, "we think it clear that, apart from Rule 12(g)(2) and (h)(1)(A), district courts have authority to find forfeiture of a venue objection." *Micron*, 875 F.3d at 1101.  In considering Defendants' venue objection, it is important to recall that venue—unlike personal jurisdiction, which goes to the court's power to exercise control over the parties—is "primarily a matter of choosing a convenient forum." *Leroy v. Great W. United Corp.*, 443 U.S. 173, 180 (1979).

The policy behind the venue rules is "to save defendants from inconveniences to which they might be subjected if they could be compelled to answer in any district, or wherever found." *Neirbo Co. v. Bethlehem Shipbldg. Corp.*, 308 U.S. 165, 168 (1939) (internal quotation omitted). Importantly, venue is a "personal *privilege*[] of the defendant, rather than [an] absolute stricture[] on the court"—a privilege that may be waived by a party.  *Leroy*, 443 U.S. at 180 (emphasis added).  As *Micron* made clear, such a privilege can also be found forfeited depending on the circumstances of a case. *Micron*, 875 F.3d at 1101.

1

Defendants have no absolute right to transfer to Delaware, and this Court has the authority to, and should, find forfeiture. Indeed, as Judge Wolford already recognized in her Decision and Order dated March 16, 2018, "Judge McCarthy found that, under *In re Micron*, there was a colorable argument that Defendants had forfeited their right to raise a venue objection at this stage of the proceedings." [Dkt. 380 at 6]. Judge Wolford further found that "[t]he Court agrees that the *In re Micron* decision left open the possibility for the Court to conclude, based on factors including the length of time this matter has been pending and its procedural posture, that Defendants have forfeited their concededly otherwise meritorious venue motion." [*Id*. at 6-7].

It is important to recognize that *Micron*'s explanation of the possible grounds to find forfeiture includes both situations where the circumstances warrant such a finding through no fault of the defendant and/or those where the defendant may have contributed to the circumstances, even though not in a manner sustaining a waiver under Rule 12. Both of these grounds exist in this case, and the Court should deny Defendants' motion.

## A.  A finding of forfeiture would promote judicial efficiency.

In *Micron*, the Federal Circuit found that, in considering whether a venue objection has been forfeited, a district court can consider factors that "implicate efficiency or other interests of the judicial system." *Micron*, 875 F.3d at 1102. If the Court were to grant Defendants' requested transfer, two different district courts would be tasked with construing identical claim terms from identical patents, regardless of what happens with respect to the oxonia issue in the related GEA and Nestlé cases. For example, Steuben has asserted claim 19 of the '188 patent against Defendants here as well as the related cases against Jasper and Kan-Pak, which all use hydrogen peroxide machines (Jasper has machines using both sterilants). Claim 19 is written in means-plus-function format and recites "means for providing a plurality of bottles." By law, means-plus-function claim terms must be construed. *See* 35 U.S.C. § 112(f). As such, and by way of non-

limiting example, if this Court were to transfer this case to Delaware both this Court and the Delaware court will be asked to construe the same claim term in a relatively contemporaneous timeframe.  The two courts would also deal with a number of other common issues such as invalidity arguments against the same patents.  That eventuality plainly undermines judicial efficiency.

Such a situation was addressed by the District of Delaware itself in *Princeton Digital Image Corp. v. Ubisoft Entertainment SA*, No. 13-335, 2018 WL 3105062 (D. Del. Jun. 25, 2018), *adopted by* 2018 WL 6790309 (D. Del. Oct. 22, 2018).  In considering whether a defendant's venue objection had been forfeited, the court stated:

> Also relevant here is the fact that the related *Harmonix* Action is pending in this Court.  That case involves the same patent, the same three asserted claims, and identical invalidity contentions.  A grant of Ubisoft's motion would require *two* courts to invest significant time and effort in order to resolve the two cases. Litigating two similar cases involving the same patent in two different venues would serve to make the overall judicial system less efficient.

*Princeton Digital*, 2018 WL 3105062, at *9 (internal citation omitted).

The same situation is present here with the related cases in this Court involving the same asserted patents, the same asserted claims, and the same invalidity contentions.  As the Federal Circuit noted in denying Defendants' petition for writ of mandamus, Defendants argued to this Court that "there's efficiency to be gained by having the invalidity contentions coordinated across all cases."  [Dkt. 396 at 3 (internal quotation omitted)].  Such efficient coordination did indeed take place.  For example, Defendant Kan-Pak did not serve its own unique invalidity contentions, opting instead to incorporate the contentions of the related case defendants, including invalidity contentions served by these Defendants relative to the '985 patent.  Moreover, Defendants here have relied on much of the same alleged prior art in their already served invalidity contentions as

the defendants in the related cases.  The overlap between this Court and the potential Delaware transferee court would be substantial and inevitable while thwarting judicial economy.

Defendants cite (at 13) to a statement made by Magistrate Judge McCarthy to the effect that "I have not spent a lot of time on any of the other claims and I don't know that I have a huge disadvantage over any other judge in this or any other district who might take a look at whatever else needs to be construed."  *Id.* (citing Dkt. 430 at 28).  While it is true that the Court has to date focused on certain validity and claim construction issues with respect to the "aseptically disinfecting" term, it is equally true that the Court has gained familiarity with the patents, aseptic packaging technology, and the FDA's regulation of aseptic packaging technology.  The Court's familiarity with those issues will assist it later in the case where, for example, the FDA's regulation of aseptic packaging technology will be relevant to the obviousness issues in the related cases. Simply put, over the past nine years, this Court has gained familiarity with the patents and issues that provide it with a substantial advantage in terms of efficiency over any other court.

The *Princeton Digital* decision is again apt for this point:

> The *Ubisoft* Action has been pending in this Court for over five years.  The Court and the District Court have expended significant time and energy in becoming familiar with various issues in the case—a case involving some fairly complex video game-related technology.  Relatedly, the Court and the District Court have issued numerous decisions on a vast array of case-related disputes.  The mechanics of transfer or re-filing would take time, and if another judge were to pick this case up in a few months, that judge would need to expend resources to get up to speed. Thus, dismissal or transfer would inevitably lead to further delay in resolving this matter, and such delay certainly would not promote the just, speedy and inexpensive resolution of this dispute.

*Princeton Digital*, 2018 WL 3105062, at *9 (internal citation omitted).

Consistent with *Princeton Digital*, in denying without prejudice Defendants' first renewed motion to transfer, Magistrate Judge McCarthy noted that he "cannot ignore the fact that this case has been pending for over seven years."  [Dkt. 371 at 4].  To that end, in addition to gaining

familiarity with the patent related issues, the Court has invested resources in deciding a litany of motions filed by these Defendants.  Indeed, Shibuya Hoppmann's first move was to file a fact intensive multi-part motion to dismiss, which was followed a few days later by a motion to stay the case pending the reexamination proceedings at the PTO.  [Dkt. Nos. 7, 9].  And, for its part, Hood's first move after filing its Answer was to file a fact intensive motion for summary judgment seeking dismissal before any discovery had been exchanged.  [12-cv-211, Dkt. 21].  Defendants then proceeded to file motions relating to, *inter alia*, the protective order, stays pending the PTO proceedings, and various discovery issues, which further supports a finding of forfeiture.  *See McCleskey v. CWG Plastering, LLC*, No. 15-cv-01284, 2017 WL 1408049, at *4 (S.D. Ind. Apr. 19, 2017) (finding forfeiture where a "[defendant] has required effort of the Court in addition to providing the expectation to the [plaintiff] that it would defend this suit on the merits"), *rev'd on unrelated grounds*, 897 F.3d 899 (7th Cir. 2018).

By contrast, in *In re Oath Holdings Inc.*, 908 F.3d 1301 (Fed. Cir. 2018), cited by Defendants (at 12-13), the Federal Circuit found that "[t]he record simply does not indicate the type of significant judicial investment that might, in some circumstances, support a determination of forfeiture."  *Oath Holdings*, 908 F.3d at 1306.  This is a case with such circumstances where judicial investment and overall judicial economy do, in fact, support a finding that Defendants' venue objection has been forfeited, together with the interests of all parties and other circumstances, and the Court should deny Defendants' Motion.

### B.  Hood has contributed to circumstances supporting a finding of forfeiture by foregoing several opportunities to object to litigating in the Western District of New York where it has deep and growing roots.

*Micron* offers a "starting point for a claim of forfeiture, whether based on timeliness or consent or distinct grounds:  a defendant's tactical wait-and-see bypassing of an opportunity to declare a desire for a different forum, where the course of proceedings might well have been altered

by such a declaration." *Micron*, 875 F.3d at 1102.  Hood had several opportunities to argue that venue was inconvenient or otherwise improper in this District—but chose not to do so.  It was not until the Supreme Court issued its opinion in *TC Heartland* that Hood eventually—and opportunistically—decided to try to move this case away from this Court.  Because Hood bypassed its prior opportunities to object to venue while the coordinated cases progressed through the claim construction proceedings, the Court could exercise its discretion and find the objection forfeited for this reason as well.

Responding to the Complaint in 2012, Hood did not make a motion under Federal Rule of Civil Procedure 12(b)(3) seeking to dismiss the case for improper venue.  Nor did it move to transfer venue for forum *non conveniens* under 28 U.S.C. § 1404.  Hood also chose not to assert improper venue as an affirmative defense in its answer, and otherwise never objected to venue in over five years of actively litigating this case.  The only thing Hood did was to deny Steuben's venue allegation in its answer with a single word: "Denied."  [12-cv-211, Dkt. 13, ¶ 7].  In its moving papers here, Hood attempted to make much of that venue "denial," arguing that it was sufficient to put Steuben on notice of its venue objection even though it decided not to make a motion or assert an affirmative defense.  Hood argued (at 3) that it "did not file a motion to dismiss for improper venue, because doing so would have been futile in light of the Court's earlier denial of Shibuya Hoppmann's venue motion."  But in reality, the reason that Hood did not file a motion for improper venue is because it is perfectly at home in this District.  In fact, it has a substantial presence here, making it indisputably subject to personal jurisdiction in this Court—which was the governing standard for determining venue in 2012 when Hood answered.  It is therefore unclear— and Hood does not explain—what the basis of the "denial" in its answer that venue was proper could have been.

Hood has long had a presence in Western New York.  Indeed, Hood admitted that personal jurisdiction was proper in its answer, stating that it does "business in New York, including within this District," and further that "it contracts to supply goods or services in New York, including within this District." [12-cv-211, Dkt. 13, ¶¶ 5, 6].  At the time Steuben filed its Complaint against Hood in 2012, Hood operated a manufacturing facility within the Western District of New York (in Sodus) where it packaged its Heluva Good® cheeses and dips.  [Dkt. 366-2, at 1; *see also* Dkt. 366-3, at 1].  Additionally, Hood operates another manufacturing facility within the Western District of New York (in Arkport, New York), where it produces cultured dairy products.  [Dkt. 366-3, at 2].  A June 2019 article states that Empire State Development recently provided Hood with a $150,000 grant to assist with a $2 million expansion with the Arkport facility.  Stanganelli Decl., Ex. 1.

Further, Hood announced that it had acquired a milk plant within the Western District of New York in Batavia, where it will produce extended shelf life beverages.  [Dkt. 366-4, at 2].  As part of its purchase of that plant, Hood received $7,000,000.00 in tax abatements as well as a $2,000,000.00 capital grant for the Upstate Revitalization Initiative.  [*Id.*].  If Hood can accept millions of dollars in tax breaks from Western New York, it can litigate in this District.  In the forfeiture analysis, it certainly is not the case that prejudice to the Defendants of litigating here would outweigh the prejudice to Steuben if this case is transferred.

An article from March 2019 states that Hood is investing "around $205 million" in the Batavia plant.  Stanganelli Decl., Ex. 2 at 1.  The article includes a quote from Vice President of Operations for Hood has "found Genesee County to be very welcoming from an employee standpoint, raw milk supply ad overall quality of contractors."  *Id.* at 2.  In addition, the article states that Hood's "project is getting over $9 million in incentives from the [Genesee County

Economic Development Center]," which incentives "were to encourage Hood to proceed with the expansion and renovations of the Batavia facility, while also helping defray a small portion of the cost of the project." *Id.* Hood has recently begun placing job postings on LinkedIn for a "Field Engineer – ESL/Aseptic" for the Batavia plant. *See* Stanganelli Decl., Ex. 3. The "Field Engineer – ESL/Aseptic" position will include: "Travel 50% + to our Sacramento CA and Winchester VA plants." *Id.* at 2. The California and Virginia plants house the aseptic bottling equipment sold by Kogyo and used by Hood that is accused of infringement in this case.

Under *Micron*, the Court should exercise its discretion and find that Hood's venue objection has been forfeited. Hood bypassed several opportunities to make any venue objection known. Moreover, it cannot be said that having Hood defend this suit in the Western District of New York—where Hood is enjoying a thriving business presence—is in any way inconsistent with the policies underlying the venue statutes. *Concession Consultants, Inc. v. Mirisch*, 355 F.2d 369, 371 (2d Cir. 1966) ("The standards of 28 U.S.C. § 1391 (1964 ed.) are 'not a qualification upon the power of the court to adjudicate, but a limitation designed for the convenience of litigants, and, as such may be waived by them.'" (quoting *Olberding v. Ill. Cent. R. Co.*, 346 U.S. 338, 340 (1953))). Simply put, any belated assertion that this forum is inconvenient for Hood is belied by Hood's substantial, longstanding, and expanding business presence here.

### C. Defendants' wait-and-see approach regarding *TC Heartland* also supports a finding of forfeiture where the course of the coordinated Markman proceedings may well have been changed had they raised their objection sooner.

Had Defendants pursued their venue objection under *TC Heartland* sooner, Steuben, the Court, and the parties in all of the related cases could have considered the potential impact of such a development on the course of the coordinated *Markman* proceedings. Defendants' failure to immediately raise their *TC Heartland* objection should alone result in a finding that Defendants

forfeited their venue objection. *See Micron*, 875 F.3d at 1101-02; *Intellectual Ventures II LLC v. FedEx Corp.*, No. 2:16-cv-00980, 2017 WL 5630023, at *3 (E.D. Tex. Nov. 22, 2017) (finding that the fact defendants continued to actively litigate the case for two months after the *TC Heartland* decision was relevant in considering forfeiture under *Micron*).

The Supreme Court granted *certiorari* in *TC Heartland* on December 14, 2016.  Between that time and the filing of their first renewed motion to transfer venue, Defendants had multiple opportunities to raise (or at least signal to the Court that they were considering raising) their new venue defense.  At the January 19, 2017, Status Conference—one month after the Supreme Court granted *certiorari* in *TC Heartland*—the Court granted Steuben permission to file one combined *Markman* brief addressing issues across the related cases.  [Dkt. 302, Tr. at 13:18-23, 17:9]. Defendants did not raise the venue concern at that time, declining to ask the Court and Steuben to consider the potential impact transferring this case might have on how the coordinated claim construction proceedings are to be carried out.  Steuben filed its combined *Markman* brief on February 3, 2017.  Over the next several months, Defendants worked on their responsive *Markman* briefs, staying completely silent on venue at the February, March, and April Status Conferences.

On May 21, 2017, the Supreme Court issued its *TC Heartland* decision.  On May 25, 2017, the Court held its monthly Status Conference, providing Defendants with yet another opportunity to raise their venue objection.  But Defendants said nothing.  On June 16, 2017, Steuben filed its *Markman* Reply briefs.  Steuben's Reply Brief submitted in this case cross-references its briefs submitted in certain of the other related cases and vice versa, and Steuben submitted its brief in this case in certain of the other related cases.

Finally, a few weeks after Steuben submitted its final *Markman* brief, Defendants filed their motion to transfer venue—two months after the Supreme Court issued its *TC Heartland*

decision.  Defendants' silence up until that point deprived the Court and Steuben of the ability to consider the potential impact Defendants' new-found venue objection might have on the coordinated claim construction proceedings—creating a situation where it would be impossible to transfer this case while keeping the same procedural posture without the need for another round of claim construction briefing in a different district that has no familiarity with this case or the technology claimed in the patents.

More particularly, based on its understanding that this Court would be the only district court engaging in claim construction in a coordinated fashion, Steuben submitted one Opening Claim Construction brief addressing issues relevant to all cases.  Certain issues addressed in that Opening Claim Construction Brief have no application to claim construction issues present in this case.  The same is true of Steuben's reply briefs.  As a result, Steuben and Defendants would need to prepare and submit new briefs if the Court were to transfer this case to Delaware.

Quoting the Federal Circuit's decision in *Oath Holdings*, Defendants argue (at 12) that they "'cannot be faulted for waiting to present a venue objection until after *TC Heartland* was decided, where the case was in an early stage [and] the defense could not properly have been adopted by the district court at the time.'"  *Id.* (alterations in Defendants' brief) (quoting *Oath Holdings*, 908 F.3d at 1306).  But the cited sentence from *Oath Holdings* does not end where Defendants' placed the period.  Instead, it says:  "But Oath cannot be faulted for waiting to present a venue objection until after *TC Heartland* was decided, where the case was in an early stage, the defense could not properly have been adopted by the district court at the time, ***and Oath's answer expressly put respondents and the district court on notice that Oath was watching TC Heartland to see if the defense would become available***."  *Oath Holdings*, 908 F.3d at 1306 (emphasis added).  The omission of the emphasized language is key here.  Had Defendants made an effort to inform

Steuben and the Court that they were watching *TC Heartland* as the defendant in *Oath Holdings* did, the parties and Court could have accounted for that fact before embarking on closely coordinated rounds of claim construction briefing.

Steuben respectfully requests that the Court invoke its discretion and find that Defendants' two-month delay coupled with a lay-in-wait approach during the coordinated claim construction briefing in these cases further supports forfeiture of the venue objection under *Micron*. *See Hamilton v. Atlas Turner, Inc.*, 197 F.3d 58, 61 (2d Cir. 1999) (finding forfeiture of personal jurisdiction defense due to a defendant's inaction in failing to raise a defense earlier); *see also Agri-Labs Holding LLC v. Taplogic LLC*, 304 F. Supp. 3d 773, 783-84 (N.D. Ind. 2018) (applying *Micron*, finding that one month delay in seeking transfer of venue following *TC Heartland* coupled with three year pendency of the case resulted in forfeiture of a venue objection); *Keranos LLC v. Silicon Storage Tech., Inc.*, No. 2:13-cv-00017, 2018 WL 7283284, at *2 (E.D. Tex. Mar. 1, 2018) (applying Micron and finding the "[d]efendants' delay" in bringing their motion "is amplified by the length of time Keranos's cases have been pending—nearly five years").

### D. The interests of Steuben and other parties in maintaining this suit in the Western District of New York support a finding of forfeiture.

In *Micron*, the Federal Circuit explained that it is appropriate to consider factors that "implicate efficiency or other interests of . . . other participants in the case." *Micron*, 875 F.3d at 1102. Both Steuben and the defendants in the related cases have an interest in maintaining this suit in this District. When Steuben filed this suit, venue was understood to be proper as to all parties under prevailing law. The same is true with respect to the defendants in the related cases.

Recognizing the overlap among the cases—and at the requests of the parties, including Defendants—the Court coordinated these cases for certain pretrial purposes and claim construction. *See, e.g.*, *Steuben Foods, Inc. v. Oystar Grp.*, No. 10-cv-780, 2018 WL 6718418, at

*1 (W.D.N.Y. Oct. 1, 2018) ("The parties are generally familiar with the nature of these five patent infringement actions which, although not formally consolidated, are being handled on a parallel track for purposes of pretrial proceedings."); *Steuben Foods, Inc. v. Shibuya Hoppmann Corp.*, No. 10-cv-781, 2018 WL 3195149, at *2 (W.D.N.Y. Jan. 16, 2018), *adopted by* 2018 WL 1363503 (W.D.N.Y. Mar. 16, 2018) ("Although it has not been formally consolidated with the other Steuben actions involving the same patents, by agreement of the parties the actions have been de facto consolidated for purposes of pretrial procedure and claims construction pursuant to *Markman v. Westview Instruments, Inc.*, 517 U.S. 370 (1996) . . . .").

Such coordination made sense to foster efficiency and consistency across the related cases. All involved parties as well as the Court have an interest in consistency across the cases involving the same patents and asserted claims. In fact, Magistrate Judge McCarthy has recognized that "[t]he court and the parties to these actions all have a significant interest in consistent interpretation of Steuben's patent claims." [Dkt. 371 at 4]. Transferring Defendants' case now would risk inconsistency and undermine the interests of Steuben, the defendants, and the courts in consistent results.

Steuben additionally has an interest in the defendants in the related cases seeking coordinated discovery from it. Indeed, efficiency in the discovery process was a reason Steuben brought suits for the related cases within the same district. If this case is transferred to Delaware, it will inevitably proceed along a different schedule. This eventuality would create a situation where coordination among the related cases across two venues would be impractical, if not impossible. As a result, Steuben's witnesses may not be able to be deposed on consecutive days, which places an undue burden on Steuben. That prejudice to Steuben is an additional relevant consideration to a finding that Defendants' venue objection has been forfeited. *See Boston Sci.*

*Corp. v. Cook Grp. Inc.*, 269 F. Supp. 3d 229, 242 (D. Del. 2017) ("It may well be that in any particular case the Court, after excusing waiver based on *TC Heartland*, should next proceed by assessing whether, in any event, a defendant should not be permitted to press its effort to change venue.  Prototypical examples of where the Court might reach such a conclusion include where a . . .  transfer would unduly prejudice a plaintiff.").

### E.  Dismissal is not appropriate.

Defendants' motion requests that this case—which has been pending since 2010 and in which the parties and Court have invested substantial resources—be dismissed under Federal Rule of Civil Procedure 12.  For the reasons above, Steuben believes the Court can and should deny the motion based on a finding of forfeiture.  However, to the extent the Court finds Defendants' venue objection has not been forfeited, transfer would be the appropriate relief.  "Transfer rather than dismissal is preferred where transfer would work no hardship on the defendant, but the refusal to transfer would severely prejudice the plaintiff." *Anscombe Broad. Group, Ltd. v. RJM Commc'ns, Inc.*, No. 03-cv-0306, 2004 WL 2491641, at *10 (W.D.N.Y. Nov. 3, 2004) (citing *Corke v. Sameiet M.S. Song of Norway*, 572 F.2d 77, 79 & n.6 (2d Cir.1978)).  Defendants' motion contains no allegation that they would suffer hardship if the case were transferred to the District of Delaware rather than being dismissed.  As such, to the extent the Court finds that venue is improper in this District, the appropriate course of action is for the Court to transfer this case to the District of Delaware, rather than dismissing it.

**DATED:**     October 17, 2019                Respectfully submitted,

                                          BARCLAY DAMON LLP

                                                */s/ Joseph L. Stanganelli*
                                        Joseph L. Stanganelli
                                        One Financial Center, Suite 1701
                                        Boston, MA  02111
                                        Telephone:  (617) 274-2900
                                        jstanganelli@barclaydamon.com

                                        2000 Five Star Bank Plaza
                                        100 Chestnut Street
                                        Rochester, New York 14604
                                        Telephone:  (585) 295-4000

                                        GARDELLA GRACE P.A.
                                        Cook Alciati
                                        80 M Street SE, 1st Floor
                                        Washington, DC  20003
                                        Telephone:  (703) 721-8379
                                        calciati@gardellagrace.com
                                        *Attorneys for Plaintiff Steuben Foods, Inc.*

## **CERTIFICATE OF SERVICE**

I hereby certify that on October 17, 2019, I caused the foregoing document to be served electronically on Defendants' counsel of record by filing it with the Court's ECF system.


_____ /s/ *Joseph L. Stanganelli*
Joseph L. Stanganelli